**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Padilla, ) | |
| ) | No. CIV 04-1018-PHX-DKD |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| JoAnne Barnhart, Commissioner, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Teresa Padilla appeals from the Commissioner of the Social Security Administration's decision to adopt the Administrative Law Judge's ("ALJ") ruling denying her claim for disability benefits for two and one half years before October 2, 2000, the date the ALJ found her to be disabled. Pending before this Court are Plaintiff's Motion for Summary Judgment or Motion to Remand to the Commissioner (Doc. #8-1, 8-2), filed September 2, 2004, and Defendant's Cross Motion for Summary Judgment (Doc. #16), filed November 16, 2004. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).

**PROCEDURAL HISTORY**

Plaintiff suffers from bilateral carpal tunnel syndrome, mild on the left and resolved on the right, status post-decompression surgery, adhesive capsulitis of the right shoulder, status post-arthroscopy, and degenerative arthritis of the left shoulder. Plaintiff can no longer work in her past profession as a hairstylist and has not engaged in substantial gainful activity since

May 22, 1998. Plaintiff filed for a period of Disability Benefits and Supplemental Security Income (SSI) on April 18, 2000 alleging disability onset beginning May 1, 1998. These claims were denied June 12, 2000. On August 14, 2000, Plaintiff filed for Disabled Widow's Insurance Benefits beginning May 22, 1998. This claim was denied December 21, 2000. A timely hearing request was filed on June 8, 2001 and a hearing held at which Plaintiff amended the claim with respect to the SSI and Disability Insurance Benefit to reflect a disability onset date of May 22, 1998.

Plaintiff received a partially favorable judgment granting Disability Insurance Benefits under section 216(I) and 223 of the Social Security Act, Disabled Widow's Insurance Benefits under section 202(e), and SSI benefits as of October 2, 2000. However, from May 22, 1998 to October 1, 2000, the ALJ found that despite her inability to do her past work as a hairdresser, Plaintiff was able to perform sedentary work and retained Residual Functional Capacity ("RFC") to perform other work existing in significant numbers in the national economy. Plaintiff then requested a review by the Social Security Administration Commissioner to remand or reverse the ALJ's decision denying her benefits from May 22, 1998 to October 1, 2000. Plaintiff's review was denied on April 13, 2004.

<u>Treating Physicians</u>

In May 1998, Plaintiff first complained to Dr. Kim Lucas, her primary care physician, of pain and numbness located in her upper right extremity. Dr. Lucas placed her on a no-work status, and referred her to Dr. Conklin, a hand, wrist, and upper extremity surgeon. After referral from Dr. Lucas, an EMG nerve test was conducted and found to be consistent with a diagnosis of moderately severe carpal tunnel syndrome (TR 212). Plaintiff received conservative treatment, including physical therapy, without success (TR 335).

On April 7, 1999, operated on by Dr. Conklin, Plaintiff underwent an invasive procedure receiving debridement and subacromial arthroscopic decompression with open Mumford resection for a subcromial impingement of the right shoulder, acromioclavicuar joint degeneration, inferior synovitis of the rotator cuff, and labral degeneration (TR 197-202).

1 Following surgery, Dr. Conklin referred Plaintiff to Dr. Bodell for her continued pain. Plaintiff
2 complained of pain in her right shoulder and Dr. Bodell noted that there were signs of
3 impingement and assessed Plaintiff as having tendinitis. On August 18, 1999, Dr. Bodell
4 recommended proceeding with surgery on the right carpal tunnel, and indicated that Plaintiff
5 "remains on a no-work status referable to persistent pain, the continuing problem of the
6 untreated carpal tunnel, and the residual problems following surgery of her right shoulder" (TR
7 405).

8      On September 10, 1999, Dr. Bodell determined that it was appropriate to proceed with
9 right carpal tunnel decompression (TR 402). On November 18, 1999, Dr. Gottlieb performed
10 the surgery, noting that her symptoms had lasted for a year without improvement using
11 conservative treatment (TR 225). On November 30, 1999, Dr. Bodell examined Plaintiff 12
12 days post carpal tunnel release and reported a concern for her finger extension and the pain that
13 it caused (TR 401). On December 20, 1999, Plaintiff was seen by Dr. Bodell regarding her left
14 wrist and hand. He noted her wrist motion had decreased and she continued to have radiating
15 pain. He suspected carpal tunnel in the left hand; however, despite her great pain, he
16 recommended that the right hand heal before taking any action on the left (TR 400).

17      On January 17, 2000, Dr. Bodell examined Plaintiff and made recommendations with
18 respect to her work description as a hairdresser. Ultimately, Dr. Bodell said she could work as
19 long as the work "falls under the sedentary to light, non-repetitive type job descriptions as
20 described by U.S. Department of Labor" (TR 397). On March 6, 2000, Dr. Bodell noted that
21 "if the carpal tunnel were the only issue she could probably return to a modified work status"
22 (TR 396). He concluded that "[t]he real issue that is preventing her from returning to work
23 seems to be the shoulder" (*Id.*). On April 11, 2000, Dr. Bodell sought authorization for an EMG
24 for Plaintiff's left shoulder (TR 395). On November 30, 2000, Dr. Bodell filled out a form from
25 the SSA regarding her ability to work, indicating that Plaintiff could never do work overhead
26 or above shoulder level, and could only do occasional non-power or non-repetitive handling or
27 holding with the right and left hand, and could only use the left or right hand occasionally. He
28

- 3 -

noted that she was also capable of picking or pinching occasionally - for 1/3 of a normal 8 hour workday (TR 391-392).

Dr. Phillips first treated Plaintiff in May, 2000. At that time, he noted that she was capable of light duty, "with essentially no forceful use of the right upper extremity. She may do no hair cutting, no reaching, lifting, pushing or pulling with the right upper extremity" (TR 483). On August 22, 2000, Dr. Phillips performed arthroscopic right shoulder surgery with capsulotomy, and acromioplasty revision for adhesive capsulitis of the right shoulder (TR 247-249). A week later, on August 28, 2000, in a post-operative examination, Dr. Phillips noted Plaintiff's trouble getting motion back and advised that she may use the arm for daily activities but not for lifting anything heavy (TR 460).

On October 12, 2000, Dr. Phillips diagnosed Plaintiff with acromioclavicular degenerative disease in her left shoulder. Plaintiff was also assessed with a work-related rotator cuff tendinopathy with a possible tear. The MRI showed impingement of the supraspinatus and spurring consistent with subcromial bursitis. There were also symptoms of carpal tunnel in her left wrist (TR 455). He recommended left median nerve decompression for her left shoulder; Plaintiff decided against surgery because of the limited success of her right shoulder surgery (TR 452). On November 21, 2000, Dr. Phillips filled out a form regarding Plaintiff's ability to work. He indicated that for 1/3 of an 8 hour work day Plaintiff could work below the shoulder level, extend her wrist and use fingering. However, Dr. Phillips indicated that other than those identified, all other activities could never be performed (TR 453-454).

On February 1, 2001, Dr. Phillips increased her pain medication and referred her to a pain management specialist (TR 451). On November 29, 2001, Dr. Phillips noted that Plaintiff could be developing full blown regional pain syndrome of the upper left extremity similar to the right side (TR 475). Finally, a month later, on December 28, 2001, Dr. Phillips reported that the Plaintiff could not lift, reach, push, or pull with her left arm (TR 476).

On February 10, 2000, Dr. Guidera examined Plaintiff after she had been sent to him by a Senior Claims Representative for her employer's insurance company, Gallager Basset

- 4 -

Services, for an Independent Medical Evaluation. Upon examination, Dr. Guidera diagnosed her with mild left carpal tunnel syndrome, resolved right carpal tunnel and with adhesive capsulitis of the right shoulder (TR 447). He found she had a normal range of motion on her left and limited shoulder motion on her right (TR 445).

On March 30, 2000, Dr. Guidera filled out a form regarding her ability to work, based on his treatment of her carpal tunnel syndrome. He indicated that she was limited to typing fifteen minutes per hour for a maximum of two hours per day (TR 438-440). On June 12, 2000, Dr. Guidera found that there were no signs of atrophy and Plaintiff had resolved numbness and paresthesis in her right hand; however, she continued to have it in the left hand. He suggested a corticosteroid injection for the left hand, foregoing operative intervention because of the mild nature of her symptoms. He also put Plaintiff on protective, non-repetitive work status (TR 432). He again suggested she receive a corticosteroid injection on her July 17, 2000 visit (TR 433).

A month later, on August 14, 2000, Dr. Guidera noted that the left shoulder pain would benefit from nerve decompression and that Plaintiff's left hand was symptomatic again (TR 428). On September 25, 2000, Dr. Guidera's examination indicated that Plaintiff was still symptomatic with respect to her left carpal tunnel syndrome (TR 428). On October 24, 2000, Dr. Guidera recommended proceeding with left median nerve decompression at the wrist (TR 425). On December 5, 2000, he reported that Plaintiff was concerned with proceeding with a carpal tunnel release on her left hand because she could not reach behind her with her right hand because of her shoulder stiffness and thus would be unable to perform activities of daily living (TR 425). On January 15, 2001, Dr. Guidera performed a follow up examination, and reported Plaintiff's biggest problems were her shoulders, and that her hand was a source of discomfort. He indicated that it would be appropriate to wait until her right upper extremity motion is better before proceeding on the left (TR 424).

Administrative Hearing

At the administrative hearing, Plaintiff testified, as did Sandra Richter, the Vocational Expert. Plaintiff testified that she can do light dishwashing; is able to help a little with housework, by watering plants; and her worst medical problem is both of her shoulders (TR 498, 503). She testified that on a good day (about 10-15 days a month ) she can walk a block without having to rest; can stand and/or sit for one hour; she can't lift above her shoulders, and can lift three pounds (TR 500, 503). Walking causes her right shoulder to swell; standing causes her pain; when she sits, the right arm starts to go numb, and the left causes her pain (TR 511-512). She testified that she had trouble with grip strength, manipulation, and that cold weather bothered her (TR 501). She attempted to return to work part-time, cleaning and answering phones at the salon; she tried to resume work as a hairdresser without success (TR 506). Before the second shoulder surgery, her pain level was 7-10, on a scale of 1-10 (TR 510). She testified that her daughter helps her dress, and combs her hair (TR 513).

Following Plaintiff's testimony, the ALJ asked the VE several questions. The VE testified that Plaintiff could not perform her past work. The ALJ then asked her to assume the restrictions set forth in Dr. Guidera's Physical Capacities Evaluation (which the ALJ acknowledged was related solely to Plaintiff's hand problems, because he was not treating her shoulders), there were "possible assembly positions that she might be able to do" (TR 519). The ALJ found in his decision that Plaintiff "retains the residual functional capacity to perform a significant range of sedentary work," based upon Dr. Guidera's opinion (TR 38).

Asked to assume Dr. Phillips' restrictions, the VE stated "[i]t's a little bit contradictory, because he says light duty she could do, but she could do no hair cutting, no reaching, no lifting, pushing or pulling with the right upper extremity...if she can't use her right upper extremity for any lifting" (TR 520). She went on to conclude that she did "not know of a job that would fit into the category of work that she could do, that would not require some lifting" (*Id.*). Even if she assumed that the lifting would have to be done with the left hand, "that would be a problem" (TR 520).

- 6 -

Plaintiff's counsel then asked the VE to assume the restrictions outlined by Dr. Bodell. The VE testified that assuming such restrictions, it would preclude the assembly positions because Dr. Bodell's opinion "says non-power, non-repetitive and she can only use the left or right hand occasionally. Which would be a problem because those jobs would require frequent" [sic] (TR 521). In addition, the VE testified that assuming the restrictions outlined by Dr. Phillips, and *how that would impact the earlier hypothetical considering the limitations set forth by Dr. Guidera*, the VE opined that "these physical limitations seem to say that she can only work below shoulder level occasionally, and then he is limiting her grasping and holding with the right hand to nothing. So based upon those limitations, there would not be jobs that she could do" (TR 521). Then, adding the limitations regarding the left arm in the later report by Dr. Phillips to the ones that related to her wrists, the VE was asked whether that would preclude the assembly position. She responded: "It says no lifting, reaching, pushing or pulling with the left arm. So that would eliminate the left arm. And she could not do the job without using the left arm" (TR 522).

**STANDARD OF REVIEW**

The ALJ findings will be affirmed if they are supported by substantial evidence and are free from reversible error. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the ALJ's decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1988). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

1  The court must affirm the ALJ'S decision where the evidence considered in its entirety 2 substantially supports it and the decision is free from reversible error. 42 U.S.C. § 405(g); 3 *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to 4 more than one rational interpretation, the ALJ's decision must be upheld. *Andrews* at 1039-40.

## DISCUSSION

<u>Treating Physicians' Opinions</u>

An examining physician's uncontradicted opinion may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Even if the examining physician's opinion is contradicted by another physician, the ALJ may not reject an examining physician's opinion without setting forth "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*

"Specific and legitimate reasons" must be set out by the ALJ in a detailed and through factual summary of the conflicting clinical evidence and presented in the interpretation of the evidence as supported by an explanation of why the ALJ's interpretation, rather than the doctor's, is correct. *Reddick*, 157 F.3d at 722. An ALJ is not free to accept one portion of a treating physician's report and disregard others. *Eduland v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). When the ALJ does not provide adequate reasons for rejecting an examining physician's opinion, that opinion is credited "as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Hammock v. Bowen,* 879 F.2d 498 (5th Cir.1989)).

Plaintiff contends that the ALJ selectively reviewed the medical record, using earlier assessments rather than later more restrictive findings, when the most recent are the most probative. Specifically, Plaintiff contends that the ALJ ignored some of Dr. Phillips' limitations in his later opinions, including the December, 2001 opinion, even though, according to the VE, these limitations would preclude a hypothetical claimant from work. Instead, the ALJ used the May, 2000 report that Plaintiff "could perform light work with no forceful use of her right upper extremity" ignoring the next sentence where Dr. Phillips stated that she "cannot reach, lift, push or pull with the right upper extremity." In addition, Plaintiff asserts that the ALJ provided no

1  reasons for rejecting the treating physicians' opinions, particularly in light of the VE's testimony
2  that when all of Dr. Phillips' limitations are considered, including those listed in his November,
3  2000 and December, 2001 notes, in addition to Dr. Guidera's hand limitations, that a
4  hypothetical claimant with those limitations could not work.  In addition, the VE testified that
5  with Dr. Bodell's November, 2000 limitations, in addition to Dr. Guidera's hand limitations, a
6  hypothetical claimant could not work.

7  The ALJ's adoption of Dr. Phillips' older assessment was less probative of Plaintiff's
8  condition. *Young v. Heckler*, 803 F.2d 968 (9th Cir. 2001). It was also improper to selectively
9  adopt one sentence in the opinion, while ignoring the next sentence. *Eduland v. Massanari.*
10  The ALJ give no explanation for rejecting the majority of Dr. Phillips' and Dr. Bodell's
11  opinions, which necessarily means that he did not give the "specific and legitimate reasons"
12  supported by substantial evidence in the record. *Lester v. Chater*. This is particularly important
13  because of the VE's conclusion, based upon their limitations, in addition to those listed by Dr.
14  Guidera, that Plaintiff would be precluded from work. The Court finds that in light of the ALJ's
15  failure to give any reasons for rejecting these opinions, they will be accepted as true as a matter
16  of law. *Id*.

17  Credibility Findings

18  The ALJ is responsible for determining credibility, resolving conflicts in medical
19  testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ's finding must be
20  supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. Once the claimant produces
21  medical evidence of an underlying impairment, the ALJ may not discredit the claimant's
22  testimony as to the severity of her symptoms merely because they are unsupported by objective
23  medical evidence. *Id.* The ALJ can discredit claimant's allegations based on inconsistencies
24  in testimony, but cannot discredit solely because the degree of pain alleged by the claimant is
25  not supported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.
26  1991). Unless there is affirmative evidence showing that a claimant is malingering, the ALJ's
27  reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*.
28

1  "General findings are insufficient, rather the ALJ must identify what testimony is not credible
2  and what evidence undermines the claimant's complaints." *Id.* Where the ALJ fails to properly
3  refute a claimant's testimony regarding her symptoms, that testimony is accepted as true as a
4  matter of law. *Rodriguez v. Bowen*, 876 F.2d 759, 661 n.6 (9th Cir. 1989). Finally, an ALJ may
5  not selectively rely on treatment notes in rejecting a claimant's credibility. *Holohan v.*
6  *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

7  The Court finds that the ALJ committed reversible error in evaluating Padilla's
8  credibility. He found that "[w]hile there is objective support for claimant's allegations of pain,
9  the undersigned finds the claimant's pain is not as limiting as she alleges." SSR 96-7p requires
10  detailed instructions regarding the analysis of credibility as it relates to pain. The ALJ may
11  discount subjective complaints only if there are inconsistencies in the record as a whole,
12  supported by substantial evidence. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
13  599 (9th Cir. 1999). The level of activity must be inconsistent with claimed limitations.

14  The ALJ listed daily activities "including the ability to wash dishes, water plants, shop
15  for groceries with assistance, and prepare meals," but did not explain how those activities were
16  inconsistent with claimed limitations in walking, sitting and standing. The ALJ cannot rely on
17  a claimant's limited activities of daily living to demonstrate the ability to perform substantial
18  gainful activity because many home activities are not transferable to the workplace where it may
19  be impossible to periodically rest or take medication. *Vertigan v. Halter*, 966 F.3d 1044, 1049-
20  50 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In addition, disability
21  claimants should not be penalized for attempting to lead normal lives in the face of their
22  limitations. *Reddick*, 157 F.3d at 722.

23  The ALJ also noted that although Plaintiff testified she had difficulty walking and
24  standing, the "medical record did not evidence any problems that would impact her ability to
25  walk or stand." However, as Plaintiff points out, this ignores her obesity as a contributing
26  factor; in addition, she testified that walking causes shoulder pain and swelling, and sitting
27  causes her arms to go numb on the arm rest. The ALJ was not free to discredit this testimony

solely because the degree of pain alleged by Plaintiff was not supported by objective medical evidence. *Bunnell v. Sullivan*. Because there has been no suggestion of malingering in this case, the ALJ was required to give clear and convincing reasons for rejecting Plaintiff's testimony. *Lester v. Chater*. The ALJ's credibility assessment was legally insufficient. Therefore, her testimony is credited as a matter of law. *Id*.

<u>Hypothetical Question to Vocational Expert</u>

Plaintiff next maintains that the ALJ did not consider the opinions of doctors regarding Plaintiff's shoulder impairment when asking the hypothetical question, thereby violating 20 CFR § 1527(2)(b), which requires that he consider and evaluate every medical opinion submitted in connection with a claim. Dr. Guidera's own notes and his Physical Capacity Evaluation indicate that his opinion is limited to his treatment of her carpel tunnel syndrome, because he was not the treating physician for her shoulder problems (TR 472). The ALJ was required to base his hypothetical on medical assumptions supported by substantial evidence in the record that reflected not just Plaintiff's hand limitations, but her shoulder limitations as well. *Light v. Social Security Administration*, 119 F.3d 789, 793 (9th Cir. 1997). This is particularly significant in light of her testimony, and the supporting medical opinions, that her shoulders were the main medical problem which prevented her from returning to work. Finally, as outlined above, when the VE was posed with the hypotheticals taking into account all of Plaintiff's impairments, she found that Plaintiff could not work. As such, her testimony constitutes substantial evidence, supporting a disability finding.

## REMAND

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of this Court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir.1989). A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). This rule recognizes the importance of expediting disability claims. *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994).

When the ALJ does not provide adequate reasons for rejecting a treating physician's opinion, that opinion is credited "as a matter of law." *Lester v. Chater*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Here, the ALJ did not provide adequate reasons for rejecting the majority of the treating physicians' opinions. Similarly, where the ALJ fails to properly refute a claimant's testimony regarding her symptoms, that testimony is accepted as true as a matter of law. *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.6 (9th Cir. 1989). In this instance, the ALJ did not provide clear and convincing reasons for characterizing Plaintiff's testimony as not credible. Thus this Court accepts Plaintiff's symptomatic testimony as true as a matter of law. Finally, taking into consideration the VE's testimony responding to counsel's hypotheticals which included the impairments from her wrists and shoulders, the VE's testimony constitutes substantial evidence supporting a finding of disability.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgement is **GRANTED** (Doc. #8-1).

**IT IS FURTHER ORDERED** that Defendant's Cross Motion For Summary Judgement is **DENIED** (Doc. #16).

**IT IS FURTHER ORDERED** that this case be remanded to the Social Security Administration for an award of benefits (Doc. #8-2).

DATED this 28th day of September, 2005.

_____
David K. Duncan
United States Magistrate Judge